| | |
|---|---|
| Sneha Nyshadham (SBN 300590)<br>Sneha.nyshadham@finnegan.com<br>FINNEGAN, HENDERSON, FARABOW,<br>  GARRETT & DUNNER, LLP<br>3300 Hillview Avenue<br>Palo Alto, CA  94304<br>Telephone:   (650) 849-6600<br>Facsimile:    (650) 849-6666<br><br>Lionel M. Lavenue (*pro hac vice forthcoming*)<br>lionel.lavenue@finnegan.com<br>Bradford C. Schulz (*pro hac vice forthcming*)<br>bradford.schulz@finnegan.com<br>Deanna C. Smiley (*pro hac vice forthcoming*)<br>Deanna.smiley@finnegan.com<br>FINNEGAN, HENDERSON, FARABOW,<br>  GARRETT & DUNNER, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA 20190-6023<br>Telephone:    (571) 203-2700<br>Facsimile:     (571) 203-2777<br><br>Attorneys for Plaintiffs<br>BMW OF NORTH AMERICA, LLC, and<br>BMW MANUFACTURING CO., LLC | Forrest A. Jones (SBN 286951)<br>Forrest.jones@finnegan.com<br>R. Benjamin Cassady (*pro hac vice forthcoming*)<br>R.benjamin.cassdy@finnegan.com<br>Joseph M. Myles (*pro hac vice forthcoming*)<br>Joseph.myles@finnegan.com<br>Amy L. Fulton (*pro hac vice forthcoming*)<br>Amy.fulton@finnegan.com<br>FINNEGAN, HENDERSON, FARABOW,<br>  GARRETT & DUNNER, LLP<br>901 New York Avenue, NW<br>Washington, DC 20001-4413<br>Telephone:    (202) 408-4000<br>Facsimile:     (202) 408-4400<br><br>Cory C. Bell (*pro hac vice forthcoming*)<br>Cory.bell@finnegan.com<br>FINNEGAN, HENDERSON, FARABOW,<br>  GARRETT & DUNNER, LLP<br>Two Seaport Lane<br>Boston, MA 022190-2001<br>Telephone:    (617) 646-1600<br>Facsimile:     (617) 646-1666<br><br>Kara A. Specht (*pro hac vice forthcoming*)<br>Kara.specht@finnegan.com<br>FINNEGAN, HENDERSON, FARABOW,<br>  GARRETT & DUNNER, LLP<br>271 17th Street, NW Suite 1400<br>Atlanta, GA 30363-6209<br>Telephone:    (404) 653-6400<br>Facsimile:     (404) 653-6444 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BMW OF NORTH AMERICA, LLC, and BMW MANUFACTURING CO., LLC<br><br>                    Plaintiffs,<br><br>               v.<br><br>KATHI VIDAL, in her official capacity performing the functions and duties of the Under Secretary of Commerce for Intellectual Property and Director, United States Patent and Trademark Office, and the UNITED STATES PATENT AND TRADEMARK OFFICE,<br><br>                    Defendants. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Administrative Procedure Act Case |

Plaintiffs BMW of North America, LLC and BMW Manufacturing Co., LLC (collectively "BMW"), file this Complaint for Declaratory and Injunctive Relief against Defendant Kathi Vidal, in her official capacity performing the functions and duties of the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office (the "Director"), and Defendant United States Patent and Trademark Office (the "Patent Office") and alleges as follows:

**NATURE OF ACTION**

1. This is an action pertaining to U.S. Patent No. 7,925,416 ("the '416 Patent") (Ex. A) brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, challenging Defendants' September 14, 2023 decision ("the *Ex Parte* Decision") (Ex. B) to vacate BMW's request for *ex parte* reexamination of the '416 Patent ("the *Ex Parte* Reexamination").

2. In the *Ex Parte* Decision, the Patent Office's Office of Patent Legal Administration ("OPLA"), acting on behalf of the Director, erroneously, arbitrarily, and capriciously exercised its discretion in terminating the *Ex Parte* Reexamination under 35 U.S.C. § 325(d). Ex B. (*Ex Parte* Decision), at 10.

3. The multiplicity provision, 35 U.S.C. § 325(d), applies to any proceeding before the Patent Office and tasks the Director with determining whether a petition for post-grant review raises "the same or substantially the same prior art or arguments previously [ ] presented to the [Patent Office]." 35 U.S.C. § 325(d); *see also In re Vivint*. 14 F.4th 1342, 1351-52, 54 (Fed. Cir. 2021) (confirming that § 325 applies to *inter partes* review and *ex parte* reexamination procedures). It "identifies two separate issues for the Director to consider in exercising discretion to deny [ ] review: whether the petition presents to the Office the same or substantially the same art previously presented to the [Patent Office], or whether the petition presents to the [Patent Office] the same or substantially the same arguments previously presented to the [Patent Office]." *Advanced Bionics, LLC v. MED-EL Elektromedizinische Gerate GmbH*, IPR2019-01469, Pap. 6, 7 (Feb. 13, 2020) (precedential). And the Patent Office further recognizes that the 35 U.S.C. § 325(d) "statutory language does not address the challenging factual questions, such as when a ground of unpatentability presents 'substantially the same prior art or arguments' previously presented to the [Patent Office]." *Id*. at 9. Thus, the Patent Office resolves this "highly factual inquiry" of 35 U.S.C. § 325(d) and whether "proffered art or

1

PLAINTIFF'S COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
CASE NO.

1  arguments are 'the same or substantially the same' as art or arguments previously presented to the [Patent Office]" by way of the *Becton* factors. *Id*. at 7. The *Becton* factors "provide useful insight into how to apply the framework under 35 U.S.C. § 325(d)," and weigh "the same or substantially the same" art and arguments previously presented to the Patent Office during "*any* proceeding." *Id*. at 9-10.

4.   The '416 Patent faced validity challenges from multiple challengers, and several claims were confirmed unpatentable by the Federal Circuit. The OPLA recognized that BMW had no *inter partes* reviews "involving the '416 Patent that were denied institution on the basis of undesirable, incremental or abusive petitioning under § 325(d)," underscoring the likelihood that BMW's *Ex Parte* Reexamination would have passed muster under the *inter partes* review *Becton* analysis, yet the OPLA nevertheless terminated the *Ex Parte* Reexamination. Ex B. (*Ex Parte* Decision), at 9.

5.   The OPLA, in terminating review under 35 U.S.C. § 325(d) in the *Ex Parte* Decision, arbitrarily and capriciously cast aside the Patent Office's highly factual inquiry set forth under the *Becton* factors. Ex B. (*Ex Parte* Decision), at 10. The OPLA found that the *Becton* factors were "not persuasive," and instead concluded that the "weight of the grounds in the request [ ] present the same or substantially the same prior art that was previously presented to the Office." *Id*. Specifically, the OPLA determined that it was not bound by the *Becton* factors because an "*ex parte* reexamination proceeding is not a trial proceeding" like its *inter partes* review brethren. *Id*. The OPLA rationalized that "the *Becton* factors were specifically formulated to apply to AIA trial proceedings, not to *ex parte* reexamination proceedings." *Id*. But the OPLA's arbitrary decision that the *Becton* factors do not apply to *ex parte* reexaminations failed to identify material distinctions between powers specifically enumerated for the *inter partes* review trial process, and the *ex parte* reexamination process.

6.   In discarding the *Becton* factor analysis and terminating the *Ex Parte* Reexamination, the OPLA committed the same arbitrary and capricious error the Director previously argued for, and the Federal Circuit corrected in *In re Vivint*. 14 F.4th at 1354. In *In re Vivint*, the Director argued that because *inter partes* review and *ex parte* reexaminations involve different procedures and policies (i.e., one is a trial and one is not), that the Patent Office was free to exercise its discretion differently respectively under 35 U.S.C. § 325(d) as it saw fit. *Id*. The Federal Circuit held, however, that it saw

2

PLAINTIFF'S COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
CASE NO.

1  "no difference between the IPR and *ex parte* reexamination processes that would justify" inconsistent 35 U.S.C. § 325(d) findings between the two proceedings. *Id*. Thus, the OPLA's decision here to disregard the *Becton* factors as a "trial proceeding" procedure for *inter partes* reviews lacked material distinctions to the *ex parte* reexamination procedures at hand and was similarly arbitrary and capricious. The OPLA cast aside well-established *Becton inter partes* review procedures for analyzing the "substantially the same prior art or arguments" component of 35 U.S.C. § 325(d), failed to replace them with comparable *ex parte* reexamination procedures, and instead terminated a granted *ex parte* reexamination based on an arbitrary and unexplained analysis. Not only was the OPLA's underlying *Ex Parte* Decision erroneous and arbitrary, but by discarding the *Becton* reasoning it created an informal policy supporting future arbitrary decisions.

7. For these and the other reasons explained below, the *Ex Parte* Decision was arbitrary and capricious and contrary to law, in violation of 5 U.S.C. § 706(2)(A).

**THE PARTIES**

8. Plaintiffs BMW of North America, LLC ("BMW NA") and BMW Manufacturing Co., LLC ("BMW MC") are limited liability companies organized and existing under the laws of the state of Delaware. BMW NA has its principal place of business in Woodcliff Lake, New Jersey; and BMW MC has its principal place of business in South Greer, South Carolina.

9. Defendant Kathi Vidal is the Under Secretary of Commerce for Intellectual Property and Director of the Patent Office. The Director oversees the operations of the Patent Office and is statutorily vested with the authority to decide whether to institute *ex parte* reexamination of a patent claim. 35 U.S.C. § 304. The Director is being sued in her official capacity. Her principal place of business is in Alexandria, Virginia; but upon information and belief, she regularly conducts business at the San Jose Patent Office location. Additionally, upon information and belief, the Senior Legal Advisor of the OPLA that issued the *Ex Parte* Decision also regularly conducts business at the Patent Office California locations.

10. The Patent Office is a federal agency within the United States Department of Commerce and is headquartered in Alexandria, Virginia with a regional Silicon Valley office located in San Jose, California.

3

PLAINTIFF'S COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
CASE NO.

**JURISDICTION AND VENUE**

11. This case arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

12. Pursuant to 5 U.S.C. § 702, Defendants have waived sovereign immunity for purposes of this suit.

13. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by 5 U.S.C. §§ 702-706, by Federal Rules of Civil Procedure 57 and 65, and by the inherent equitable powers of this Court.

14. Venue is proper in this District under 28 U.S.C. § 1391(e) and 5 U.S.C. § 703 because Defendants are located and perform official duties in this District.

15. The *Ex Parte* Decision is a final agency action subject to judicial review under 5 U.S.C. § 704.

16. Because the *Ex Parte* Decision was rendered solely on the basis of 35 U.S.C. § 325(d), 35 U.S.C. § 303(c) does not bar this suit.

**FACTUAL BACKGROUND**

**The Patent System**

17. "The Patent Clause itself reflects a balance between the need to encourage innovation and the avoidance of monopolies which stifle competition without any concomitant advance in the 'Progress of Science and useful Arts.'" *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 63-64 (1998). On one hand, to "promote the progress of science and useful arts," the Constitution empowers Congress to "secur[e] for limited times to . . . inventors the exclusive right to their . . . discoveries." U.S. Const., art. I, § 8, cl. 8. But on the other hand, those exclusive rights are tempered, and the "novelty and nonobviousness requirements of patentability embody a congressional understanding, implicit in the Patent Clause itself, that free exploitation of ideas will be the rule, to which the protection of a federal patent is the exception." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 151 (1989).

18. Indeed, "[p]atents have been part of federal law since the inception of the nation," and a key engine of innovation and economic growth. § 1:1. Introduction, 1 Annotated Patent Digest § 1:1. And companies like BMW depend on the U.S. patent system both to provide strong legal protection

4

PLAINTIFF'S COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
CASE NO.

for meritorious patent claims while also "weed[ing] out bad patent claims efficiently," without the need for expensive litigation. *Thryv, Inc v. Click-To-Call Techs., LP*, 140 S. Ct. 1367, 1374 (2020).

19. To achieve these goals, and to ensure that bad patents do not inhibit innovation and competition, Congress enacted parallel administrative processes for parties to seek review of the patentability of an issued patent claim: *inter partes* review ("IPR"); and *ex parte* reexamination ("EPR"). *See id.* ("By providing for *inter partes* review, Congress, concerned about overpatenting and its diminishment of competition, sought to weed out bad patent claims efficiently."); *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1353 (2018) ("Maybe the invention wasn't novel, or maybe it was obvious all along, and the patent owner shouldn't enjoy the special privileges it has received. To remedy these sorts of problems, . . . Congress has supplemented litigation with various administrative remedies. The first of these was *ex parte* reexamination.").

20. First, the Leahy-Smith America Invents Act ("AIA") established IPR petitions as a parallel mechanism for challenging the patentability of an issued patent. *Inter partes* review is an adversarial "administrative process in which a patent challenger may ask the [Patent Office] to reconsider the validity of earlier granted patent claims." *Thryv*, 140 S. Ct. at 1370; *see* 35 U.S.C. § 311 et seq. An IPR petitioner must file a petition identifying, "with particularity", "each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim". 35 U.S.C. § 312. Within three months, the Director decides whether to institute an IPR petition. *Id*. § 314(b). If the Director decides to institute, the Patent Trial and Appeal Board ("PTAB") must conduct a trial and issue a "final written decision with respect to the patentability of any patent claim challenged" within one year. *Id*. §§ 316(a)(11), 318(a).

21. Second, "[a]ny person at any time" may request that the Patent Office reexamine the patentability of an issued patent claim, through *ex parte* reexamination. *Id*. § 302. If the Director concludes that a request raises a substantial new question of patentability ("SNQP"), the Director must order an *ex parte* reexamination to resolve the question of patentability. *Id*. §§ 303-304. The Manual of Patent Examining Procedure (MPEP) defines a question as an SNQP unless the same question of patentability has already been: (A) decided in a final holding of invalidity by a federal court in a decision on the merits involving the claim, after all appeals; (B) decided in an earlier concluded

5

PLAINTIFF'S COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
CASE NO.

examination or review of the patent by the Office; or (C) raised to or by the Office in a pending reexamination or supplemental examination of the patent. *See* MPEP § 2242(I); § 303(a). Thus, a prior question of patentability must have been decided, not merely raised or considered by the Patent Office; otherwise, there is a SNQP warranting *ex parte* reexamination to resolve the question of patentability. *In re Vivint*, 14 F.4th at 1349. Thereafter, the "reexamination will be conducted according to the procedures established for initial examination under the provisions of §§ 132 and 133." 35 U.S.C. § 305.

22. Similar to the SNQP exception, § 325(d) provides another narrow exception to the public's general right to petition for IPRs or request EPR. Where SNQP pertains to issues of patentability already decided and not merely raised or considered by the Patent Office, § 325(d) pertains to those issues of patentability previously raised or considered by the Patent Office. Section 325(d) provides that the Director may elect not to institute an IPR proceeding or reexamine an EPR request if the challenge to the patent is based on matters previously presented to the Patent Office. *See Advanced Bionics*, p. 7 n.7 (noting that the Board institutes trial on behalf of the Director, 37 C.F.R. § 42.4(a)); Ex B. (*Ex Parte* Decision), at 11 (noting that the OPLA terminates EPR requests on behalf of the Director).

23. Thus, 35 U.S.C. § 325(d) identifies two separate issues for the Director to consider in exercising discretion to deny review: "whether the petition presents to the [Patent Office] the same or substantially the same art previously presented to the [Patent Office], or whether the petition presents to the [Patent Office] the same or substantially the same arguments previously presented to the [Patent Office]." *Advanced Bionics*, p. 7. "The question of whether proffered art or arguments are 'the same or substantially the same' as art or arguments previously presented to the [Patent Office] is a highly factual inquiry, which may be resolved by reference to the factors set forth in *Becton, Dickinson*," often termed the *Becton* factors. *Id*. The *Becton* factors "provide useful insight into how to apply the framework under 35 U.S.C. § 325(d)" to "address the challenging factual questions" the statutory language does not address. *Id*., at 9. The *Becton* factors are non-exclusive, but a first set of three typically pertain to determining whether the same or substantially the same art or arguments were previously presented to the Patent Office in any proceeding while a second set of three typically pertain

6

Plaintiff's complaint for declaratory
and Injunctive Relief
Case No.

to determining whether the requester demonstrated a material error in the analysis of those prior art or arguments by the Patent Office in the respective proceedings:

**Whether the Same or Substantially Same Art/Argument Presented in Any Proceeding**

(a) the similarities and material differences between the asserted art and the prior art involved during examination;

(b) the cumulative nature of the asserted art and the prior art evaluated during examination;

(d) the extent of the overlap between the arguments made during examination and the manner in which petitioner relies on the prior art;

**Whether the Patent Office Erred in a Manner Material to the Patentability of Claims**

(c) the extent to which the asserted art was evaluated during examination, including whether the prior art was the basis for rejection;

(e) whether petitioner has pointed out sufficiently how the examiner erred in its evaluation of the asserted prior art;

(f) the extent to which additional evidence and facts presented in the petition warrant reconsideration of the prior art or arguments.

*Advanced Bionics*, pp. 9-10, fn. 10.

24. For instance, "Factor (c) focuses on the record developed by the [Patent Office] in previously reviewing the art or arguments. It informs, therefore, the petitioner's showing under factors (e) and (f), which focus on the petitioner's evidence of previous [Patent Office] error regardless of the context in which the same or substantially the same art or arguments were previously presented. For example, if the record of the [Patent Office]'s previous consideration of the art is not well developed or silent, then a petitioner may show the [Patent Office] erred by overlooking something persuasive under factors (e) and (f). On the other hand, if the alleged error is a disagreement with a specific finding of record by the [Patent Office], then ordinarily the petitioner's required showing of material error must overcome persuasively that specific finding of record. That is, although [*Becton*] factor (c) evaluates "the extent to which the asserted art was evaluated during examination, including whether the prior art was the basis for rejection," the focus should be on the record when determining whether the [Patent Office] erred in evaluating such art or arguments." *Advanced Bionics*, pp. 10-11.

7

PLAINTIFF'S COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
CASE NO.

**The Relevant Patents**

25. The '416 Patent is a divisional patent of parent U.S. Patent No. 7,512,475 (the "'475 Patent"). Each originally issued to an automotive component supplier, Delphi Technologies, Inc., and each is directed to systems and methods of reducing the speed of a vehicle in a turn, implemented through an adaptive cruise control ("ACC") system. The '475 Patent issued on March 31, 2009; the '416 Patent issued on April 12, 2011.

26. The relevant claims of the '416 Patent recite, among other things, an adaptive cruise control system that (1) reduces vehicle speed in a turn according to the vehicle's position within the turn and (2) ignores objects detected during the turn that are not in the vehicle's path.

27. Claim 1 of '416 Patent recites:

> A method of controlling a vehicle having an adaptive cruise control system capable of obtaining a vehicle lateral acceleration, said method comprising the steps of
>
> determining when the vehicle is in a turn based on a detected change in the vehicle lateral acceleration;
>
> determining a vehicle path during the turn;
>
> detecting an object;
>
> determining whether the object is in the vehicle path during the turn;
>
> reducing the vehicle speed if the object is determined to be in the vehicle path during the turn; and
>
> ignoring the object for braking purposes if the object is determined not to be in the vehicle path during the turn.

The '416 Patent, Ex. A, 8:7-19.

28. On or around September 18, 2018, Carrum Technologies, LLC ("Carrum"), a patent assertion entity, acquired the '475 Patent and the '416 Patent.

**The Carrum Litigations**

29. On October 23, 2018, Carrum sued BMW, Ford Motor Company, and FCA US LLC in the United States District Court for the District of Delaware for alleged infringement of the '475

8

PLAINTIFF'S COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
CASE NO.

1  Patent and the '416 Patent. *See Carrum Technologies, LLC v. BMW of North America, LLC, et al*, Case No. 1-18-cv-01645-RGA (D. Del.); *Carrum Technologies, LLC v. Ford Motor Company*, Case No. 1:18-cv-01647-RGA (D. Del.); *Carrum Technologies, LLC v. FCA US LLC*, Case No. 1:18-cv-01646-RGA (D. Del.) ("the Carrum Litigations").

30.  As explained in more detail below, multiple parties challenged the claims asserted in the Carrum Litigations. Eventually, on July 15, 2022, the PTAB found claims 1-2, 7, and 9 of the '416 Patent unpatentable. Ex B. (*Ex Parte* Decision), at 2. And on October 9, 2020, the PTAB found claims 1, 4, 6, and 8 of the '475 Patent unpatentable. IPR2019-00903, Pap 24 (October 9, 2020). Carrum nevertheless continues to assert the following claims against BMW in the Carrum Litigations: claims 2, 3, 5, 7, and 9-12 of the '475 Patent; and claims 3-6, 8, and 10-14 of the '416 Patent.

31.  Given that the PTAB found claims 1-2, 7, and 9 of the '416 Patent unpatentable, and that the Federal Circuit confirmed their unpatentability, BMW requested *ex parte* reexamination of the remaining 3-6, 8, 10-14 claims for the '416 Patent. The Director, however, improperly vacated BMW's request under the 35 U.S.C. § 325(d) multiplicity provision.

**The Unified Patents IPR (the '416 Patent)**

32.  On December 31, 2018, Unified Patents, LLC ("Unified Patents") filed an IPR challenging the validity of the '416 Patent. Ex B. (*Ex Parte* Decision), at 2. The PTAB granted institution, reviewing claims 1, 2, 7, and 9-11. *Id*. In a final written decision, the PTAB found all challenged claims of the '416 Patent to be unpatentable under 35 U.S.C. § 103.

33.  The PTAB specifically found that claims 1-2, 7, and 9 were obvious under 35 U.S.C. § 103 in view of *Russell*, *Fukada*, and *Mazda*; while claims 10-11 were obvious under 35 U.S.C. § 103 in view of *Harada*, *Russell*, and *Mazda*. Ex B. (*Ex Parte* Decision), at 2.

34.  Carrum appealed to the Federal Circuit, and on August 13, 2021, the Federal Circuit partially reversed the final written decision of the PTAB, finding that the prior art asserted by Unified did not teach the "controller" limitation of independent claim 10 or dependent claim 11. Ex B. (*Ex Parte* Decision), at 2.

35.  Claims 1-2, 7, and 9 of the '416 Patent remained unpatentable under 35 U.S.C. § 103 in view of *Russell*, *Fukada*, and *Mazda*.

9

PLAINTIFF'S COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
CASE NO.

### The Three BMW Parallel IPRs (the '416 Patent)

36. BMW filed three parallel IPR petitions on April 20, 2019, before the PTAB issued its institution decision for the Unified Patent IPR on July 16, 2019, each respectively challenging the validity of the '416 Patent. Ex B. (*Ex Parte* Decision), at 2-3. The IPR2019-00904 challenged claims 1-14 under 35 U.S.C. § 103 in view of various combinations of *Winner, Schmitt*, *Ishizu*, *Khobadhai*, and AAPA; the IPR2019-00905 also challenged claims 1-14 under 35 U.S.C. § 103 in view of various combinations of Brochure, *Schmitt*, *Ishizu*, *Khodabhai*, and AAPA; and the IPR2019-00928 challenging claims 1-14 under 35 U.S.C. § 103 in view of various combinations of *Winner*, *Fukada*, *Khobabhai*, and AAPA. Ex B. (*Ex Parte* Decision), at 3. The PTAB ultimately denied institution for all three between October 18, 2019, and November 5, 2019. *Id.* at 3-4.

### The *Ex Parte* Reexamination (the '416 Patent)

37. BMW filed the *Ex Parte* Reexamination for the '416 Patent on March 24, 2021, challenging remaining claims 3-6, 8, and 10-14. Ex B. (*Ex Parte* Decision), at 4. The *Ex Parte* Reexamination raised the following grounds under 35 U.S.C. § 103 challenging:

   a. claims 3-6, 8, 10-14 as obvious in view of Brochure, *Khobabhai*, *Prestl*, *Winner* NPL, or *Widmann*, in combination with *Schmitt*;

   b. claim 3 as obvious in view of Brochure, *Khobabhai*, *Prestl*, *Winner* NPL, or *Widmann*, in combination with *Schmitt* and *Eckert*;

   c. claims 4-6 as obvious in view of Brochure, *Khobabhai*, *Prestl*, *Winner* NPL, or *Widmann*, in combination with *Schmitt* and *Ishizu*; and

   d. claims 8, 11-14 as obvious in view of Brochure, *Schmitt*, and *Prestl*.

38. The Patent Office ordered reexamination on May 6, 2021. Ex B. (*Ex Parte* Decision), at 4. The Central Reexamination Unit found that all grounds raised an SNQP, and stated that unpatentable claims 1, 2, and 7 would be considered to the extent necessary to address the dependent claims. *Id*. The Patent Office further issued a non-final action rejecting the claims in view of the respective challenged grounds on September 22, 2021. *Id*. As a long-standing Patent Office practice, the Patent Office fully evaluated the provisions of 35 U.S.C. 325(d) when it ordered reexamination on May 6, 2021, and again when it issued the office action on September 22, 2021. Ex. C (BMW

10

PLAINTIFF'S COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
CASE NO.

Response), at 10.

39. A week later, on September 29, 2021, the Federal Circuit issued the *In re Vivint* decision confirming that the Director was to apply its 35 U.S.C. § 325(d) discretion consistently across IPR and EPR proceedings. *In re Vivint*. 14 F.4th at 1354-55 (Fed. Cir. 2021).

40. Carrum filed a petition on November 22, 2021, to vacate the *Ex Parte* Reexamination, requesting termination of the reexamination proceeding pursuant to *In re Vivint* and 35 U.S.C. § 325(d) to (1) vacate for failure to establish an SNQP and to (2) vacate the order under 35 U.S.C. 325(d). Ex B. (*Ex Parte* Decision), at 5. The Patent Office procedurally dismissed Carrum's petition to vacate for failure to establish an SNQP. *Id*. at 10. BMW filed its opposition on January 13, 2022. *Id*. at 5.

41. In opposition, BMW underscored the need for the OPLA to apply the *Becton* factors and to decline exercising discretion under the multiplicity 35 U.S.C. § 325(d) provision for vacating the *Ex Parte* Reexamination. Ex. C (BMW Response), at 5. In particular, BMW noted that the Patent Office's inconsistent determinations across the patent family—including the '416 and '475 Patents—warranted closer inspection of the (1) various prior art references and arguments, and (2) whether the Patent Office erred in previous examinations, *i.e.*, precisely the analysis the *Becton* factors call for. *Id*. Further, BMW argued that overlap between petitions and proceedings was inevitable because several of the '416 Patent claims (and several of the '475 Patent claims for that matter) were already found unpatentable, including at least one independent claim. Most importantly, however, unlike the previous proceedings for the '416 Patent, the earlier examinations never considered the combination of *Schmitt* with the BMW Brochure for claims 3-6 and 8, and never considered *Prestl* at all. *Id*.

42. For the first part of the *Becton* analysis, BMW noted that:

   a. "For *Becton* factor (a), none of the BMW Brochure, *Schmitt, Khodabhai,* and *Prestl* were previously considered during prosecution of the '416 Patent. Indeed, the Patent Office specifically noted that, because '*Schmitt's* teachings are directly related to the subject matter considered as the basis for allowability of the patent claims, a reasonable examiner would consider evaluation of the *Schmitt* reference as important in determining the patentability of the claims.' Order Granting EPR at 9. The Board considered the combination of the BMW Brochure with *Schmitt* and other prior art as

11

PLAINTIFF'S COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
CASE NO.

1  to claims 10-14, but not claims 3-6 or 8. And the Patent Office never considered *Prestl*
2  at all." *Id*. at 14-15.

    b. "For *Becton* factor (b), the Patent Office already found that *Schmitt* is not cumulative of any prior art considered during prosecution of the '416 Patent because *Schmitt's* teachings overlap the Examiner's stated reasons for allowance. *Id*. Moreover, the Patent Office never considered the combination of the BMW Brochure with *Schmitt* as to claims 3-6 or 8. And the Patent Office never considered *Prestl* at all. Carrum argues that *Prestl* is cumulative of the BMW Brochure, but this argument is undermined by the Patent Office's use of *Prestl* in combination with the BMW Brochure." *Id*. at 15.

    c. "For *Becton* factor (d), because the BMW Brochure and *Schmitt* combination had not been raised as to claims 3-6 and 8, there is no overlap between the arguments in the previous IPRs and the arguments in this reexamination as to those claims. As to claims 10-14, this reexamination adds prior art and arguments not considered in the previous IPRs. Carrum argues that this reexamination uses the Board's decisions denying inter partes review as a 'roadmap,' but that is not true. This reexamination distinguishes the previous IPRs by presenting new prior art and arguments never previously considered by the Board—exactly what has been found to be outside the scope of § 325(d). *See OticonMedical AB v. Cochlear Ltd.,* IPR2019-00975, Paper No. 15 at 16, 19-20." *Id*. at 15.

43.    For the second part of the *Becton* analysis, BMW noted that:

    a. "For *Becton* factor (c), none of the cited prior art was cited during prosecution of the '416 Patent, and none was the basis for a rejection. In its decision denying institution of inter partes review, the Board analyzed the BMW *Brochure-Schmitt-Khodabhai* combination in only two short paragraphs. IPR2019-00905, Paper No. 9 at 21. In these paragraphs, the Board did not even mention *Schmitt* or *Khodabhai*. *Id*. The Board never examined the combination of the BMW Brochure and *Schmitt* despite that this combination was found to invalidate claims of the '475 Patent in another IPR." *Id*. at 16.

12

PLAINTIFF'S COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
CASE NO.

b. "For *Becton* factor (e), the Board's failure to consider *Schmitt's* relevance to the validity of the '416 Patent, having found the combination of the BMW Brochure and *Schmitt* to invalidate claims of the related '475 patent, was error. In its decision denying institution of inter partes review, the Board found that the BMW Brochure does not disclose a controller, despite Carrum's concession that the BMW Brochure discloses the controller. *Id.* at 20-21. For that reason, in the Request, BMW cited specific disclosures in *Schmitt* demonstrating that its speed reduction functionality is performed using a controller in communication with its ACC system. Request at 119. Had the Board considered *Schmitt's* teachings, as the Examiner did in this reexamination, the Board would have reached the same conclusion that *Schmitt* discloses the controller." *Id*. at 16.

c. "For *Becton* factor (f), the Board's invalidation of claims of the '475 Patent based on the BMW *Brochure-Schmitt* combination alone demonstrates the need to reexamine claims 3-6, 8, and 10-14 of the '416 Patent. As of now, the Patent Office has issued inconsistent positions with respect to the BMW *Brochure-Schmitt* combination, and the validity of claims 3-6, 8, and 10-14 of the '416 Patent is questionable. This inconsistency warrants reconsideration of the BMW *Brochure-Schmitt* combination. Moreover, the Request presents new prior art and arguments that have never been considered by the Patent Office. These new prior art and arguments independently warrant consideration of the BMW Brochure, *Schmitt, Khodabhai,* and *Prestl.*" *Id*. at 16-17.

44. When the Patent Office initially ordered reexamination, it impliedly determined that the "*public* interest in reexamination that goes beyond the interests, or propriety of behavior, of a particular challenger" weighed in favor of reexamining claims 3-6, 8, and 10-14 of the '416 Patent. *In re Vivint*, 14 F.4th at 1354. BMW's *Ex Parte* Reexamination was not the type of "abusive filing practice" the Federal Circuit expressly and narrowly addressed and cautioned against in *In re Vivint*, and the Patent Office never ruled as such. *Id*. There was no basis to reevaluate and vacate the *Ex Parte* Reexamination under 35 U.S.C. § 325(d).

13

PLAINTIFF'S COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
CASE NO.

**The *Ex Parte* Decision**

45. In vacating the *Ex Parte* Reexamination of the '416 Patent, instead of relying on the thorough *Becton* factors for analyzing 35 U.S.C. § 325(d), the OPLA oversimplified the "substantially the same prior art or arguments" inquiry to a tallying of overlapping references across the Unified Patents IPR, BMW IPRs, and *Ex Parte* Reexamination proceedings. Ex B. (*Ex Parte* Decision), at 7-8. The OPLA noted that even though "none of the grounds presented in the request [were] identical to a ground that was previously presented in the prior BMW IPRs, all of the grounds presented in the request [were] either entirely or partially composed of overlapping references (e.g., *Schmitt* is relied on in every ground)." *Id*. at 8. In weighing the overlapping of the references, the OPLA at least recognized that the *Prestl* reference was "not the same or substantially the same as those set forth" in the previously presented references, but nevertheless determined that the overall "weight of the grounds" in the *Ex Parte* Reexamination presented "the same or substantially the same prior art that was previously presented" to the Patent Office. *Id*. at 9. But the OPLA's oversimplification failed to account for the simple, yet obvious, explanation: the independent claim for the '416 Patent was already found unpatentable, and just as the dependent claims reference back to the independent claim, so to do the respective invalidating grounds (i.e., the claims themselves have *overlapping* claim limitations). The overlapping of references across grounds was inevitable because several of the '416 Patent claims, and several of the parent '475 Patent claims, were already found unpatentable. Thus, the OPLA's facial weighing and tallying of references was an oversimplification and an unnecessary arbitrary diversion from the *Becton* analysis.

46. In fact, the OPLA failed to address the most critical component to the 35 U.S.C. § 325(d) analysis—unlike the previous proceedings for the '416 Patent, the earlier examinations never considered the combination of *Schmitt* with the BMW Brochure for claims 3-6 and 8. *Id*. at 9. And the Patent Office's inconsistent determinations across the patent family—including the '416 and '475 Patents—warranted closer inspection of the (1) various prior art references and arguments, and (2) whether the Patent Office erred in previous examinations, *i.e.*, precisely the analysis the *Becton* factors call for.

47. Instead of applying the *Becton* factors, the OPLA found that "requester's arguments

14

PLAINTIFF'S COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
CASE NO.

regarding the PTAB's *Becton* factors, [were] not persuasive." *Id*. at 10. The OPLA did not provide a substantive reasoning for this decision, but instead arbitrarily found that an "*ex parte* reexamination proceeding is not a trial proceeding," and the "*Becton* factors were specifically formulated to apply to AIA trial proceedings, not to *ex parte* reexamination proceedings." *Id*. But that was an arbitrary distinction failing to identify material and distinguishable powers specifically enumerated to the *inter partes* review trial process. The OPLA even recognized that there were no *inter partes* reviews "involving the '416 Patent that were denied institution on the basis of undesirable, incremental or abusive petitioning under § 325(d)," underscoring the likelihood that, had the *Ex Parte* Reexamination been an *inter partes* review, it would have passed muster under the *inter partes* review *Becton* analysis, yet the OPLA nevertheless terminated the *Ex Parte* Reexamination. *Id*. at 9.

48.  In discarding the *Becton* factor analysis and terminating the *Ex Parte* Reexamination, the OPLA committed the same arbitrary and capricious error the Director previously argued for, and the Federal Circuit corrected in *In re Vivint*. 14 F.4th at 1354. In *In re Vivint*, the Director argued that because *inter partes* review and *ex parte* reexaminations involve different procedures and policies (i.e., one is a trial and one is not), the Patent Office was free to exercise its discretion differently respectively under 35 U.S.C. § 325(d) as it saw fit. *Id*. The Federal Circuit held, however, that it saw "no difference between the IPR and *ex parte* reexamination processes that would justify" inconsistent 35 U.S.C. § 325(d) findings between the two proceedings. *Id*. at 1354. Thus, the OPLA's decision here to disregard the *Becton* factors as a "trial proceeding" procedure for *inter partes* reviews only failed to materially distinguish the *ex parte* reexamination procedures at hand and was similarly arbitrary and capricious. The OPLA cast aside well-established *Becton inter partes* review procedures for analyzing the "substantially the same prior art or arguments" component of 35 U.S.C. § 325(d), failed to replace them with comparable *ex parte* reexamination procedures, and left a void to be filled by arbitrary analysis. Not only was the OPLA's underlying *Ex Parte* Decision erroneous and arbitrary, but by discarding the *Becton* reasoning it created an informal policy supporting future arbitrary decisions.

## COUNT I

**(Final Agency Action in Violation of 5 U.S.C. §§ 706(2)(A), (C) as to the *Ex Parte* Decision)**

15

PLAINTIFF'S COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
CASE NO.

49. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though set forth in full herein.

50. The *Ex Parte* Decision constitutes a final agency action of the Patent Office within the meaning of 5 U.S.C. § 704.

51. There are no administrative remedies available to BMW to challenge the Director's determination.

52. Under the APA, the Court "shall . . . hold unlawful and set aside" final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," id. § 706(2)(C).

53. The Director's *Ex Parte* Decision terminating the *Ex Parte* Reexamination violated § 706(2)(A) because it was contrary to law and arbitrary and capricious.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests the following judgment and relief:

A. Set aside the *Ex Parte* Decision;

B. Declare that 35 U.S.C. § 325(d) does not apply to any of the grounds presented in the *Ex Parte* Reexamination;

C. Order Defendants to revive the *Ex Parte* Reexamination to determine the patentability of the claims challenged therein;

D. Award Plaintiff its costs and attorneys' fees and expenses as allowed by law; and

E. Provide such other and further relief as the Court deems appropriate.

16

Plaintiff's complaint for declaratory and Injunctive Relief
Case No.

| | | |
|---|---|---|
| Dated: November 2, 2023 | | FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP |
| | | By: /s/ Sneha Nyshadham |
| | | Sneha Nyshadham |
| | | Attorney for Plaintiffs BMW OF NORTH AMERICA, LLC; and BMW MANUFACTURING CO., LLC |

17

Plaintiff's complaint for declaratory and Injunctive Relief
Case No.